MONTGOMERY  *v*.  REALHAFER.

(*Jackson.*   May 2d, 1887.)

EXECUTION.   *Issued after, but tested before judgment debtor's death.   Sale of land under, valid without revivor.*

Where an execution on the judgment of a court of record is *issued after,* but *bears teste before* the judgment debtor's death, and is afterward levied on *lands* subject to the judgment lien, which are sold thereunder, *without revivor* of the judgment, *within twelve months* after its rendition; the sale is valid, and communicates to the purchaser a good title to the lands.

Cases cited and approved: Preston *v*. Surgoine, Peck, 72; Ward *v*. Sutherland, Peck (Appendix); Battle *v*. Bering, 7 Yer., 529; 13 Howard, 287; 4 Howard, 58, 76; 4 Wallace, 242; 4 Ired., 377; 65 N. C., 8.

Cases cited and distinguished: Rutherford *v*. Read, 6 Hum., 423; Overton *v*. Perkins, Mart. & Yer., 367; Anderson *v*. Taylor, 6 Lea, 382; Puckett *v*. Richardson, 6 Lea, 60; Green *v*. Shaver, 3 Hum., 139; Perkins *v*. Norvell, 6 Hum., 151; Stockard *v*. Pinkard, 6 Hum., 120.

---

FROM  SHELBY.

---

Appeal from Chancery Court of Shelby County. W. W. McDOWELL, Ch.

TAYLOR & CARROLL for Complainant.

FINLAY & PETERS, and METCALF & WALKER, for Respondent.

CALDWELL, J.   June 7th, 1842, Ben Williamson recovered two judgments against John C. Mont-

gomery in the Circuit Court of Shelby County, and on the 1st of November, 1842, Montgomery died, leaving a widow and two children.

November 4th, 1842, three days after the death of Montgomery, and without revivor, executions issued on those judgments, tested October 1st, 1842, one month prior to his death. On the 8th of December following these executions were levied on a lot of ground in the city of Memphis, in said county; and under these executions the Sheriff sold the ground to R. D. Starr February 6th, 1843.

In May, 1843, Starr took the Sheriff's deed, and in February, 1845, he purchased from the widow her dower interest in the lot, taking her deed therefor.

Since about the time of the Sheriff's sale he and his assigns have been in the continuous possession of the property, claiming to be the rightful owners thereof.

The widow of Montgomery died in 1882, and in 1883 his two children filed this bill, asserting their ownership of said property as his heirs, and seeking to recover possession thereof from the assigns of Starr.

The contention of complainants is that the Sheriff's sale was void, *because made without a revivor against the heirs of Montgomery*, the judgment debtor; while the defendants insist that such revivor was not necessary, *because the executions were properly tested prior to the death.*

The precise question thus presented arose in this

Court in 1823 in the case of *Preston* v. *Surgoine*, Peck's R., 72, and was decided in accordance with the position now taken by the defendants in this case. There "a judgment was entered for the plaintiff (Preston) against Surgoine in May; he died the 14th of August, and, on the 16th, a *fieri facias* was sued out, upon which the Sheriff seized lands and personals." Judge Haywood, in delivering the opinion of the Court, said:

"In case of personals, if *fieri facias* issued after the death of defendant, *tested as of the term preceding his death*, it binds the goods. * * * *With respect to the realty, it is bound by the judgment*, and descends not to the heir, but is in *custodia legis* if the judgment be rendered *before the death of the defendant, against whom execution may issue any time before the expiration of a year and day*, after which time it cannot issue without a *scire facias* against the heir." Peck, 80.

*Ward* v. *Sutherland*, Appendix to Peck's R., was a bill for rescission of sale of a judgment against a dead man. In the opinion in that case, by Haywood, Chancellor, at page 3, this language was used:

"So in the case of a lien upon lands by judgment against the ancestor; that lien commencing by the judgment, which preceded the death of the testator, takes them into the possession of the law, so that they do not descend to the heir, and execution might be taken out upon that judgment without a *scire facias*. 2 Bac. Ab. Execution, Letter G, Sec. 2; C. Litt., 103, 290."

Montgomery *v.* Realhafer.

In *Taylor* v. *Doe,* 13 Howard, 287, there was judgment, execution, and levy upon land. Pending appraisement proceedings under the laws of Mississippi, the judgment debtor died. Subsequently *venditioni exponas* issued, *tested on a day after the death,* and sale thereunder was made by the Sheriff without revivor.

The validity of the purchaser's title was called in question 'in an action of ejectment, and the trial Judge ·charged the jury "that if they believed from the evidence that the *venditioni exponas* * . * * had been *sued out* and *tested after the death* of Crone, and without a revivor of the judgment by *scire facias,* then the sale 'and purchase were void." * * *

That instruction was held to be erroneous, and the sale was adjudged regular and valid, upon the ground that the death occurred *after the teste, issuance, and levy of the execution.*

It was decided in *Erwin's Lessee* v. *Dundas,* 4 Howard, 58, that an execution against two defendants, *bearing teste and being issued after the death* of one of them, was void, and that the sale of the land of the deceased thereunder communicated no title to the purchaser.

In that case the Court recognized the rule of the common law. that a writ of *fieri facias* relates to its *teste,* binding the goods of the defendant from that date, and in the same connection, said:

" The same doctrine, it seems, has been held to be equally applicable to executions against lands

and tenements of a deceased defendant, and, therefore, an *elegit,* bearing *teste before,* may be issued *after* his death, for the reasons given in case of executions against the goods and chattles." *Ib.,* 76.

In *Mitchell* v. *St. Maxent* Mr. Justice Davis said:

"The writ of *fieri facias* on which Mitchell rests his title *was tested after the death of St. Maxent;* and,. according to a familiar rule of the common law, it was, *therefore,* void. The death of the defendant, *before the teste of the execution,* · compels the plaintiff to sue out a writ of *scire facias,* 'for the alteration of the person altereth the process.'" 4 Wallace, 242.

Mr. Freeman makes no distinction in the matter of relation to the date of the *teste* between executions levied upon lands and those levied upon personalty. In speaking of the English practice he says:

"The execution was treated as if actually issued on the day of its *teste;* and the death of the plaintiff or defendant subsequently to the *teste* had no other effect beyond what it would have had if occurring subsequently to the actual issuing of the writ." Freeman on Ex., Section 35.

The Supreme Court of North Carolina, speaking through Reade, Judge, says:

"So a *ven. ex.* to sell lands, *tested after the defendant's death,* without a *sci. fa.* against the heirs, is null and void. *Samuel* v. *Zachary,* 4 Ire., 377. Where there is a judgment, and a *fi. fa.* or *ven. ex.* issues during the life of the defendant, the

Sheriff may proceed to sell, although the defendant die before the sale. And so he may when the *fi. fa.* or *ven. ex.* issues *after the death,* but is *tested before.*" *Aycock* v. *Harrison,* 65 N. C., 8.

These several decisions by other courts are in perfect accord with our own case of *Preston* v. *Surgoine* upon the main point. The 13th Howard case goes further, and to that extent is in conflict with the 65th N. C. case.

But the contention of learned counsel for complainants is that later decisions of this Court are in conflict with Surgoine's case. Such was undoubtedly the view of that great lawyer, Mr. Meigs, who expressed the opinion in his valuable digest that the Surgoine case was virtually overruled by *Rutherford* v. *Read,* 6 Hum., 423, so far as the question now before us is concerned. In the latter case the question in judgment was whether or not a widow was entitled to dower in the lands of her deceased husband when the lands were seized under execution in his life-time. The decision was in favor of the claim of dower; but the relation or non-relation of the execution to its *teste* was not and could not have been involved or adjudged.

It was, however, properly and well decided that the levy did not vest the title to the land in the Sheriff.

Judge Reese, who delivered the opinion of the Court, in commenting upon *Overton* v. *Perkins*, Mart. & Yer., 367, said   *   *.   *   "it decided that a

43

levy upon land did not divest the title of the owner and vest it in the Sheriff making the levy, and that, therefore, when the death of the owner took place before the sale, the inheritance descended to the heirs, and the Sheriff, with or without a *venditioni exponas*, could not make a valid sale until *scire facias* against the heirs and process thereon awarded against them." 6 Hum., 424.

In the 10th Yerger case referred to the judgment was obtained in 1809. Execution was issued and levied on land in 1810. After the levy and return of the execution without sale, the judgment debtor died. "Several years after his death a *venditioni exponas* issued to the Sheriff, commanding him to sell the land levied on as aforesaid," without revivor against the heirs or personal representative. An intervening purchaser brought his bill in chancery "to enjoin the *venditioni exponas*, upon the ground that it was void."

The defense was that the *venditioni exponas* related to the levy, which was made before the death, and that for that reason a revivor was not necessary.

Judge Green, delivering the opinion of the Court, said upon this point:

"If a *venditioni exponas* must issue to confer on the Sheriff power to proceed with the sale, that process must have parties in being. If it be awarded and bear *teste* after the death of the execution debtor, it cannot be against *him*, and command the sale of *his* land. *He* cannot be spoken

of as existing, and *he* can have no land, that having vested in his heirs. *It is not like the case of the award of an execution after the death, but which bears teste before the death. In that case the award has relation to the teste, and the process speaks at a time when the party was in life.* * * *
This *venditioni exponas* in this case was *awarded after the death* of Walker, and bears *teste after his death;* it is, *therefore,* void, and must be enjoined." 10 Yer., 333, 334.

Though Judge Green, in this opinion, does not refer to the Surgoine case, for the purpose either of approbation or dissent, he does expressly recognize the doctrine of that case, so far as involved in the present case.

Referring to the Surgoine case, Judge Catron said:

" The decision pursues the common law authorities (10 Vin. Ex., A. a., 566; 2 Ld. Ray., 849), and the opinion of the majority of the Court determines that the common law is unaltered by our statute, requiring Clerks and Sheriffs to indorse on process the time of its issuance by the Clerk and delivery to the Sheriff." *Battle* v. *Bering,* 7 Yer., 533.

It was recently held, in *Anderson* v. *Taylor,* 6 Lea, 382, that *the lien of an execution* levied upon land commences with the levy, and does not relate to its *teste.* That holding is thought by counsel for these complainants to impair, if not to destroy, the doctrine of the Surgoine case; and Judge Cooper seems to have held the same view in some

degree when he said, at the same term, after referring to *Anderson* v. *Taylor:* " If *Preston* v. *Surgoine*, is not good law upon its own facts, it cannot be sustained to any extent." *Puckett* v. *Richardson*, 6 Lea, 60.

The question decided in the Surgoine case, however, did not arise in either of the 6th Lea cases; nor did the Court, in either of those cases, undertake, in terms or otherwise, to overrule or qualify the Surgoine case.

In *Anderson* v. *Taylor* judgment was obtained in U. S. Circuit Court in May, 1868, from which execution issued in July, 1868, and was levied upon real estate in October, 1868. The property was sold in August, 1869, under *venditioni exponas*, to Morton. The contest was between Morton and Anderson, the latter of whom acquired a lien upon the property in August, 1868, *between the issuance and levy of the execution.*

It was held that the *lien of the execution*, as contradistinguished from the statutory judgment lien, attached or came into existence only when an actual levy was made; and upon that ground the right of Anderson, which accrued before the levy, was adjudged superior. If the sale to Morton had occurred before the expiration of the statutory judgment lien, as in the Surgoine case, his title would unquestionably have prevailed over the lien of Anderson.

In *Puckett* v. *Richardson*, the sale was adjudged void for want of revivor against the heirs of the

judgment debtor; but the execution was *tested* of a day *after the death,* and no opinion was expressed as to what the result would have been if the execution had been *tested before the death.*

Though the levy of an attachment creates a lien upon land, that lien cannot be enforced by sale without *scire facias* and revivor against his heirs, if the debtor die before judgment. *Green* v. *Shaver,* 3 Hum., 139; *Perkins* v. *Norvell,* 6 Hum., 151. Nor can a sale be lawfully made under an order of sale *tested after the death of the debtor,* though issued upon a judgment of condemnation entered in his life-time, upon the levy of a Magistrate's execution. *Stockard* v. *Pinkard,* 6 Hum., 120.

Such are the decisions of this Court which we regard as bearing in any way upon the question involved in this case. The Surgoine case is the only one precisely in point, and, to the extent that it is in point, it is in conflict with no other case.

We hold, therefore, that Starr acquired a perfect title to the property in controversy by his purchase at the Sheriff's sale and that official's deed, the sale being made under an execution issued from a judgment of a court of record, and *tested* of a date *prior* to the death of the judgment debtor, and the sale being made within twelve months after the rendition of the judgment.

*Scire facias* and revivor against the heirs were not necessary. The execution bearing *teste* at a time when Montgomery, the debtor, was in life,

the levy and sale are in law regarded as a proceeding against a living person.

This being conclusive of the whole case, it is not deemed necessary to determine the question made upon the deed of the widow, the nature of holding thereunder, the statute of limitations, and falling in of the life estate.

The decree dismissing the bill will be affirmed, with costs.